Case number 171158, Palmer Park Square v. Scottsdale Insurance Company. Argument does not exceed 15 minutes per side. Mr. Fulkerson, you may proceed for the appellant. Good morning. May it please the Court. I'm Don Fulkerson. I represent the plaintiff appellant, Palmer Park Square. I have reserved four minutes for rebuttal. This is the appeal from the Eastern District's decision granting the defendant's motion for summary disposition on the plaintiff's claim for uniform trade practice interest under Michigan Statute 500-20064. The District Court erroneously granted summary disposition, first of all, based on the conclusion that, in the District Court's words, the cause of action for penalty interest arose, quote, on the policy, end quote. That is not the language of the policy, and if you'll note, it's very conspicuously absent in the District Court's decision and in defense counsel's brief that the actual quotation of the policy language itself. The policy says that a legal action against us, meaning Scottsdale, under this coverage part, meaning under the commercial property insurance policy, must be filed within two years of the date of the loss. The UTPA interest claim does not arise under the coverage part of the commercial property insurance policy, and really that ends the analysis of the entire case. The policy itself, Scottsdale concedes on page 20 of their brief, that absolutely nothing in the policy in any way mentions, provides for the recovery of penalty interest. So the action to recover penalty interest cannot possibly arise under the policy because there's nothing in it. Without the policy, or without a viable claim under the policy, there'd be no interest, right? I mean, let's just say the underlying coverage claim was time barred. Wouldn't you say the interest claim goes with that? I would say yes. I would say that if there is a complete bar, for whatever reason, of the contract action under the policy, the contingency would therefore not arise. That's what makes it sound like it is on the policy. But, Your Honor, there's a distinction between a contingency and a derivation. The penalty interest is contingent upon recovery under the policy, but it is not a derivation or it's not analogous to like a consortium claim or a vicarious liability claim where it merely is subsumed as part of the same action. It has to be different. It cannot arise under the coverage part because there are different elements. There is a different source of the penalty interest. It doesn't arise within the policy. It arises from a statute. There's a different accrual provision. The cause of action under the contract under the policy arises on the date of the loss. The cause of action for penalty interest under the statute, and I think it's important to quote, it says, quote, the interest must be paid in addition to and at the time of payment of the loss, end quote. And that's subparagraph four. Claim accrues for penalty interest when the payment is made. The payment could be made, as in this case, more than two years later after the claim is filed. So if we accept the premise that it's the same thing, that the claim for penalty interest is the same as any action under the policy, forgetting that an action under the policy is a breach of contract action and has those elements, you're saying that the claim can be time barred, which is what the trial court said. The district court said since the loss occurred in February of 2012, the trial court's ruling was this claim was time barred in February of 2014. Now, there's one enormous problem with that holding. Scottsdale Insurance didn't pay the claim until June of 2015, June 26, 2015. So that's 16 months later. How does the Michigan Statute 500-2006 envision a standalone claim for penalty interest? Well, Your Honor, the statute is self-executing. It's supposed to operate independent of any lawsuit, any intervention of the court. Under Michigan law, the insurance company must pay the claim within 30 days of receipt of the proof of loss. And we cite these provisions in our brief, but I can give them to you if you need them. Within 60 days of receipt of satisfactory proof of loss, and there's no dispute that satisfactory proof of loss was provided here, interest starts to run. So those are elements of your proof in the standalone penalty interest claim under the Michigan law. Right, and I want to emphasize this because Scottsdale raises the argument that if you accept the plaintiff's position, you're going to allow taxation of interest at 12 percent forever, conceivably for six years. That is absolutely untrue. It is the insurance company that controls the entire mechanism of the claim. They're supposed to pay within 30 days. If they don't pay within 60 days, interest runs. And as soon as they tender payment, interest stops. So the argument by Scottsdale that if you hold that the six-year statute of limitation governs, you're going to allow the plaintiff to recover taxation of 12 percent interest all the way up to six years is just patently untrue. The interest stopped in June of 2015 when Scottsdale paid the appraisal award. So we have a period running from 60 days from the receipt of proof of loss until June of 2015 when the claim was paid. But what happens about a situation where you bring your claim for loss coverage, you bring it within the two-year period, but you don't say anything about interest? So all the time they're protesting, they're saying we're going to do this, we're going to do that. It takes five years. And you wait until just before year six to bring your claim for interest. That allows a lot of interest to run. I don't know. But, Your Honor, that presumes that the insurance company didn't pay the claim. No, no. That's just what I'm saying. They're spending a lot. It's very complicated. They're spending a lot of time, we'll call it for good reason, to investigate the claim. And for some reason it's very complicated. Maybe even your side is part of the blame for the delay just to make it harder. Then all of a sudden you spring on them this five-year, 12% claim. It sounds like a great investment. But under Michigan law, they have the responsibility to pay the claim timely. It's not our responsibility. As long as your proof of loss is adequate. Correct. As long as we provide satisfactory proof of loss, they must pay the claim. There's no dispute in this case that there was a satisfactory proof of loss. As a matter of fact, Judge Edmond's decision at the beginning of the decision says, but for the limitation issue, they would be liable under the UTPA. The only issue here is whether the policy's two-year limitation provision would bar the claim. So Judge Edmond said, well, there's no private right of action? Right. She did say that. What's your thought about that, first of all? Well, Your Honor, that is just contrary to a large body of Michigan law. Allen, the Michigan Attorney General opinion, Yaldo, Griswold, and the recent Nikolai case. They all recognize that there is a claim and there is a cause of action for recovery of penalty interest. And all of the defendant's cases either involved a claim where there was a complete bar to any recovery under the policy, or cases that said, we know what Yaldo said, but we're rejecting it as dicta. So this is a question for both of you, because I'm not sure I agree with either of you on this point. I really don't think of interest claims. You know, we have all these statutes and rules about interest on judgment, pre-judgment, post-judgment. I just don't think of them as causes of action. I don't actually even think of them as having limitations bars. That's just not how I think about it. So I'm not sure this hurts you, actually. I don't mean it that way. I'm just trying to figure it out. But it's not obvious to me it, quote, needs to be a private right of action. We just have interest statutes, and interest statutes have certain triggers. I really don't even ever think of them as having time bars. Well, the first response to the question is the accrual language in the statute itself. And again, the claim accrues when the payment is made, because that closes the window for taxation. But, I mean, that's true of all interests. All interest statutes have a triggered accrual date in the sense that it runs from if it's pre-judgment, it runs from when you had the problem. If it's post-judgment, it obviously, the trigger is the judgment. I don't know what it means to say the statute refers to accrual. There's no such thing as an interest statute that doesn't have an accrual date. Well, I disagree. I mean, judgment, interest on judgments. The accrual date is the judgment. Well, no, the accrual date can be the filing of the complaint and then the judgment, depending on pre- or post-judgment interest. But remember, those are linked to the specific action at law. Those statutory interest issues. This is a separate, unique interest that provides the only penalty against insurance companies under Michigan law. Why do you think what I'm saying hurts you? I guess I'm concerned that you're viewing the UTPA interest claim as somehow lumped in with any other claim, for example, for judgment interest. And I think they're quite distinct. And I'd point out that if you affirm the district court's ruling, you're going to reach a conclusion that claims will now be barred before they accrue. And I submit that's an absurd and a manifestly unjust result. And now you don't need to reach the second issue, which involves the applicability of the insurance code, the tolling provision to the surplus lines carrier. But I would just point out that the argument, in essence, is forms over substance. The statute that the defendant relies on uses the word forms. They concede, they don't dispute that that's a term of art under Michigan law and that it relates to the statute. I think what the concern is is whether this penalty statute is a stand-alone claim, which your argument is that it is a stand-alone claim because it's the legislature's decision to ensure that insurance companies don't dog the claims. Correct. They pay them. It is contingent on recovery of benefits under the policy, but it is a stand-alone claim that does not arise under the coverage of the policy. And if it doesn't arise under the coverage of the policy following the policy language, the limitation provision cannot possibly apply. They can try to rewrite the policy, but they can't ignore it or redact it, which is a little bit of what's happened here. I know my time is up. Thank you very much. I look forward to talking to you in rebuttal. Morning, Your Honors. Hans Pils for the defendant and police Scottsdale Insurance Company. It's my privilege to be here today, and I would like to start with the issue of the two-year versus six years that was raised. I think, Judge Sutton, you were right on the money when you asked the question, do we think of interest as a cause of action at all? And I personally don't. I think it's just a supplemental remedy, like punitive damages are a remedy or exemplary damages are a remedy. In fact, this Court has said so much, and I think it's the Chong Cheng case that we cited in our brief, that exemplary damages is not a stand-alone remedy. Neither is interest. It's supplemental to something you get when you otherwise have a filed a timely cause of action. But can't a state legislature choose to make a stand-alone remedy within its own discretion? And so let me answer that question this way. The appellant cited four cases, Baker, Yaldo, Nicola recently, that talk about a private cause of action. But we need to put that in the proper context. They didn't say independent cause of action, they said private cause of action. And here's the issue. What's the distinction? The distinction is that if you look at the Michigan Uniform Trade Practices Act, the only statutory agent who can enforce remedies is the Michigan Insurance Commissioner. That's MCL 500-2028-2038. But there's not that limitation in 500-2006, is there? It is part of the broader quote. So when the court said, well, what about this 12% interest, what are we going to do with that, we've got to give some sort of ability to an individual claimant to at least collect that 12% interest. So the Michigan courts carved out an exception, if you will. Yes, you can pursue that remedy. But when they said private cause of action, they were not thinking about statutes of limitations. They were just thinking about how do we give a remedy to a claimant who needs to collect a 12% interest on top of what is otherwise a viable claim. Plaintiff concedes, appellant concedes that without a viable breach of contract claim, you don't have a viable interest claim. Which is what distinguishes some of the cases upon which you rely, correct? What that distinguishes is the six-year statute. Plaintiff says, appellant says essentially we have all these cases where we have Michigan statutes, and the court said that's a six-year statute of limitations. All those cases are stand-alone causes of action. For example, the Michigan Builders Trust Fund claim, the court specifically pointed out, it's clear that a contractor or subcontractor may remain in compliance with the terms of the contracts while simultaneously violating this act. That's the Deponio case. We don't have that here at all. You cannot have not a breach of the insurance policy, but yet a breach of the interest. Counsel, just to put my cards on the table in terms of my question about it maybe not mattering whether it's a separate cause of action, I'm not sure it helps you because I really think of this as just like other interest statutes, pre-judgment, post-judgment. You don't think of them. I agree with you. You think of them as supplemental remedies separate and apart from the underlying cause of action, but you also don't think of them as having statutes of limitations. That's an odd concept. The norm is the trigger for the interest is usually a judgment or a complaint. Here it's different, of course. Michigan can do what it wants, but it, of course, makes no sense. If you're going to have a statute of limitations, I'm not even sure why you would think of having a statute of limitations because you don't need one.  You've put the cards on the table. You've brought your claim. The legislature has said the law is out there. Scottsdale knows the law. It's 12% runs. When they bring their claim is up to them. They want to wait 100 years. Why not? And it's your problem because you know the law. You're the ones not paying it. After you agree, they've presented what they need. So to me, it's not very helpful to think of it as a separate cause of action. It's not very helpful to think of it in terms of statute of limitations either. So you have to think of both together, which is why I'm not sure the point helps you. But if Your Honor is correct and someone could walk in here in the year 2117. Yeah, I'll make it 2217. And the reason that doesn't trouble me is because we don't – tell me an interest statute that has a statute of limitations. In the federal or state law, tell me one where there's a statute of limitations for bringing an interest claim. I've never heard of it. Well, but here is the problem. If on February 2, 2014, plaintiff no longer had a viable claim. The statute of limitations had run. There was no enforcement possible anymore. The fact that we voluntarily paid. You're exactly right that if the statute of limitations had run on the underlying coverage claim, then there could never be supplemental interest. I got it. But if, as everyone agrees here, the coverage claim was brought within the limitations period, then Michigan has just told us it's 12% from the time of a claim. You decide what you want to do. But the coverage claim was not brought within the time limitation period. It was not brought within two years. I submitted a claim in November 2013, but I never filed a lawsuit before February 2014. So you had told them that you recognized the viability of their claim and you were investigating it and you wanted an appraisal. Why should they have sued you in that circumstance? Because we expressly had told them, both in November 2013 and again in January 2014, that we were reserving our rights on the coverage issues, including the statute of limitations. You're not asserting the statute of limitations as to the million. You never did. That doesn't mean that we didn't have the right to do that. We chose to, on February 2014. But you paid it. We no longer had an obligation to pay. If they had sued us in March 2014, we would have owed zero. Well, unless the tolling provision applies. We'll talk about the tolling provision in a moment. But, I mean, it just doesn't matter. You paid the million. The statute operates on the million. The statute operates under the rights on the policy. So let's get back to Hearn v. Rickenbacker for a moment. Painter says, your policy has no language that says that this is a claim on the policy. It very much is a claim on the policy. Assuming that the word on and the word under are the same, which I believe they are, then Hearn says, if you have a truly independent cause of action, yes, you can assert that we have a separate statute of limitations. But they specifically use the example of the Illinois court in Pforzheim with punitive damages, saying punitive damages are not a separate claim. They are just an additional remedy. If someone breaches the statute of limitations and later says, oh, well, yeah, I cannot bring the claim, but I can still recover punitive damages 100 years from now, Hearn would say, no, you cannot do that. The same with the interest. There never was a legal obligation determined by a court under which we had to pay interest. Why isn't the claim for interest vested in the party that was making the claim upon your issuance of the check for finding the claim valid and paying for it? This kind of goes back to the accrual argument, I believe, that when we talk about accruing of interest, not accruing of statutes of limitations or causes of action, we voluntarily issued payment even though we had no legal obligation. We could have refused to go to appraisal. We could have, even after the appraisal award, we could have gone to court and said, no, we're not going to pay it. The cause of action was barred. When the cause of action for the contract claim is barred, as the appellant has conceded, the interest claim is barred, too. Why doesn't your voluntary payment subsequent to that bar vest the right for penalty interest in accordance with the statutory rate? Your Honor answers the question. Because we voluntarily paid it doesn't mean that we also voluntarily have to. You voluntarily pay. You were under contract. They could have sued you for breach of contract. They could not. Not anymore. Unless the tolling provision applies. We'll come back to the tolling provision in a moment. But except for the tolling issue that we'll talk about separately, they could not have come to us and enforced that appraisal award. The claim was gone. The claim was gone one and a half years earlier. And when you paid, why wasn't your payment a waiver of any limitations period and the event granting accrual of the 12% interest? If I waive part of a claim, do I automatically waive another part of the claim? Well, that's the question. That's the question. Has the Michigan legislature said when you pay, you owe 12%? I mean, that's the whole question in this case. It doesn't say when you pay, you owe 12%. Well, if you don't timely pay. If you haven't paid within 30 days, 60 days of proof of claim. We had all our coverage defenses reserved. On February 2014, this claim was gone. We voluntarily agreed, well, we'll go to appraisal, we'll pay it. Does that mean that we thereby waived? That's exactly why they're not suing you. And the plaintiff made that argument, too, in their opening brief, that by going to appraisal, we waived that argument and we cited a case law that says, no, we are not waiving it because we reserved our rights to deny coverage. So your position is on every claim that is presented to your company, the company may say, I want an appraisal, I need a further examination, and wait until the two-year period, if that's the statutory time in your policy, the contract time in your policy has run, and then say, well, of course we'll pay, and never have to pay the 12% interest that the Michigan legislature has specified. That's exactly right, Your Honor, and that's no different than any other statute of limitations case. It happens all the time. Parties are trying to settle the case. Meanwhile, the statute runs. It doesn't mean that anyone necessarily intended the statute to run. The statute runs. The claim is gone. If they don't agree to somehow settle the claim, there's nothing to be enforced. That's the very nature of the statute. If you lose this case, you're in a pretty good position to deal with the problem. Just whenever you make a payment, you get the other side to say, this is it. We're not doing anything more, interest included. It solves the problem, doesn't it? It may. It may. But that doesn't mean that by voluntarily paying part of the appraisal award, we therefore waived all our coverage. That's not what I'm saying. I'm just saying it's unfair. As a practical matter, that might very well be a way going forward. Judge Gomez, did you want to ask about the tolling? I do want to come back to it because that's really, to me, the much more compelling issue is the issue of what 1904 says, the tolling provision, and a couple of arguments on that point. First of all, the very language of 1904 says that it deals with the language, not just with the form. It says forms used are not subject to the code, meaning the entire code, including all the fire insurance provisions. But it also says that the policy may not contain language which misrepresents the true nature. The very statute talks about what language is not permitted in surplus lines policies. How does that not also imply that you can include any other language that you want in surplus lines policies? That's number one. Number two, 1904 doesn't say forms used by unauthorized insurers shall not be subject to code. It could have said shall not be subject to filing requirements or shall not be subject to 500.2236. That was the argument that the appellant made. The appellant says, well, 2236 wasn't enacted until 1987, seven years after the Surplus Lines Act. That's not true. 2236 was enacted in 1956, 24 years earlier. In fact, I went back and pulled the 1979 statute, the one the year before the Surplus Lines Act was enacted, and the 2236 is already in there. So they clearly could have said in 1904, we're only referring to the filing requirements of 2236. On top of that, counsel says, well, rates, on page 26 of counsel's reply, they say, well, rates, you can charge anything you want. You can charge whatever rates. And so if you look at 1904.1, which refers to rates, the rates also have to be filed under 24.08, 524.08. Well, why in 1904.1, when we talk about rates, all of a sudden it not referred to the filing requirements, and in 1904.2, when we talk about forms, all of a sudden they do refer to the filing requirements. It makes no sense whatsoever to construe it that way. Moreover, in the Gulf Underwriters case, both the Michigan Court of Appeals looked at it, the Michigan Supreme Court looked at it. They went straight to 1904 to say you cannot, they're free to use whatever language they want. That was essentially the implication. There's one very brief issue I wanted to mention. They raised the issue that the 2833 talks about all fire insurance policies, when, in fact, that was already in the code before 1980, except before 1980 you couldn't write fire insurance in Michigan on a surplus lines basis. And the 1980 Surplus Lines Act specifically now allowed fire insurance on a surplus lines basis, but with it came the 1904 provision saying surplus lines insurers are not subject to the code. So there was no need in 1980 to insert a provision in fire insurance policy contracts to say, oh, fire insurance policies, no, the surplus lines insurers have to comply with those provisions. But you're not saying that surplus lines are totally exempt from the Michigan Insurance Code, are you? Correct. I'm not saying that at all. We are subject to, for example, the penalty interest statute. What we're saying is that our policy language is not subject to mandatory policy language, and there's a very good reason for that. Think about it this way. When all those dilapidated buildings in downtown Detroit were uninsurable, what would the Michigan legislator have said to itself? Would they have said, okay, how can we get insurance companies to come in to insure those buildings? Well, gee, if we just required that the typesetting was changed from an eight fund to a seven fund or a nine fund, if we just gave them the freedom to do that, then they will come in and write those buildings. No, of course not. What they said is we need to give surplus lines insurers the freedom to write insurance on their own terms. That will bring it to market. You can charge higher rates. Say that again, John. I'm sorry. You can charge higher rates. You charge higher rates, and you write it on whatever forms you want to write it on. There's no provisions in the forms. The language, the only restriction that 1904 imposes is you cannot have language that is unfairly or that misrepresents the true nature. Other than that, surplus lines insurers can come up with any form they want for very good reason, because if they have the freedom to come in and write on whatever form they want, that's how you attract surplus lines insurers to risks that no one else wants to write. And that's why this vacant building actually perfectly fits in that category, why this was a surplus lines risk. So there's no way, in my humble opinion, that you can construe 1904 as anything other than including whatever language insurance companies want to write, and 2833 is not the subject of that. So thank you for allowing me the additional time. Mr. Fulkerson. Thanks, Judge. Well, first of all, in terms of the cause of action, we've got Allen, we've got Yalda, we've got Nicolay saying it is. And so it is. It's binding. It's the authority, and Nicolay and Yalda are Michigan Supreme Court cases, and under the rules of diversity, they're binding on this court, because your task is to find out, is to follow the law of the highest court or ascertain what that law will be, what we already know. Now, in terms of, Judge Sutton, your question, which is a good question, is, well, why do we need a statute of limitations then? Why do we need one in this situation? Well, we need one, I guess, because of this case, where we have an insurer that paid the claim but paid it more than two years out. And then once the claim was paid under 20064, the penalty interest claim was accrued, because we now know the amount of the claim. We now know the amount of penalty interest. Until Scottsdale paid the contract claim, the insurer, Palmer Park, didn't know what the penalty interest was. So the argument that Scottsdale was supposed to – Why is it showing that you need a statute of limitations on it? Well, I'm actually, I guess, thinking of the defendant, that the general statute of limitations should at least provide an outside window of saying, okay, by six years after accrual and no later. I mean, otherwise, you know, at least the file would have to remain open, even though there would be no further taxation of interest. Are there statute of limitations on other interest provisions, whether in the federal rules, federal statute? I'm not aware. I'm not aware of any. And this issue hasn't been – I think this is an issue of first impression as it relates to this Michigan statute, too. So I'm not aware of any statute of limitations that specifically relate to interest payments in other contexts. And this issue has never been addressed, whether the catch-all Michigan provision should apply to this. But if it doesn't apply, I mean, I urge you to consider this point, and I'm sure you have. How can you bar a claim before it accrues? How is that possible? And how could Palmer Park know what the full amount of the 12% interest was until Scottsdale paid in June of 2015? So how can you bar the claim 16 months earlier? Which is what the district court did. The way it normally works, going back to post-judgment interest, for example, even pre-judgment, if you file a complaint and your complaint doesn't ask for interest, I think you've got a problem. So in other words, you file a complaint within the limitations period, keeping the limitations period focused on the cause of action, the underlying cause of action, we'll say breach of contract. It's very strange to not ask for interest in the complaint, and then once you get a judgment, ask for interest. I don't know how that works, but I know the norm is to ask for it. I think there should be a request to claim for a penalty interest. Well, that's true. Why shouldn't you all from the outset have been saying we want the coverage paid, and you do what you want, but we want interest, and it's 12% from the minute we supply the relevant document. Because the complaint wasn't filed until after they denied the claim. The request was made for UTP interest at the end of the appraisal. Yeah, I'm just saying why did you do that? You're the one that just told me how important it is to put them on notice of interest running forever. That's true. Why shouldn't you let them know from the minute? It's actually a pretty good idea from your client's perspective to let the insurance company know about the 12% rate.  Let me ask you this, Your Honor. If under Michigan law they had the responsibility to pay within 30 days, why would the insured immediately demand UTP interest if they promptly pay? There's no UTP interest. There's none. So why would the insured have to immediately claim UTP interest? That's like the typical complaint. Yeah, but there's a difference between a legal cause of action filed in a complaint and a claim submitted to an insurance company under the policy, which is all we had here until they denied the request for penalty interest. I just want to point out one other thing. In terms of the tolling, I think Judge Gilman, you're asking this question. If 2833-1 does not apply, then they can put anything they want in any policy. Even though 1904 is limited to the word forms, and I never heard one rebuttal from defense counsel that forms is not as we demonstrated in our brief. They can say a one-day provision, and I would point out there's a Lloyds policy that has just come out saying we're not going to pay any more for any undetermined loss. So the stakes are high here, and I appreciate very much the court's attention to this issue. Thank you to both of you for your helpful briefs and arguments. I know it's not common for the court to allow us to rebuttal, but might I? No, no. Thank you very much. It's very uncommon, and we're done. Thank you very much for the briefs and oral arguments. The case will be submitted. The clerk may call the next case.